KELLEY et al. v. CITY OF NEW YORK et al.

District Court, S. D. New York.
May 24, 1932.

O'Brien, Boardman, Conboy, Memhard & Early, of New York City (Harold E. Stonebraker and Sutherland & Dwyer, all of Rochester, N. Y., of counsel), for plaintiffs.

Arthur J. W. Hilly, Corp. Counsel, of New York City (Charles Neave, Henry R. Ashton, and Harry A. Yerkes, Jr., all of New York City, of counsel), for defendants.

FRANK J. COLEMAN, District Judge.

The patent in suit covers an electric traffic-signaling system, and is alleged to be infringed by the New York City system of traffic lights. The defendants deny infringement and allege invalidity of the patent because of prior patents, publications, and uses. It is not necessary to pass on the defense of invalidity, because it is clear that the New York system does not infringe the patent, but it should be noted that the prior art was so close as to prohibit any broad construction of the claims.

The patent calls for a number of electric signals, either bells or lights, located at various points in the city streets at distances which would make each signal perceptible from an adjacent one, and all connected with a central office from which they may be operated. The specification states that each individual signal is to be on a separate circuit so that each may be operated separately at the central office, though there may be a common return wire for each street with a master switch, which would have to be closed before any of the signals on that street could be operated by the closing of their individual switches. There is also disclosed a separate telltale light in the central office for each one of the street signals to indicate whether that signal is operating.

The purpose of the invention as stated in the patent is to enable the operator in the central office to select a route for a fire-engine, ambulance, or other special emergency vehicle and to operate the street signals along that route from the point where the vehicle starts up to the point of its destination. Its only use is to be in clearing the way for an emergency vehicle and not in the normal regulation of traffic. It requires that the central operator have separate control of each individual signal, because otherwise the selection of the various routes determined by the starting points and destinations of the vehicles would be impossible.

The statements in the specification tending to limit the scope of the patent to a system for the routing of emergency vehicles are reinforced by the history in the Patent Office. The Examiner ruled that the applicant's system was anticipated by prior patents except in so far as it applied to "pointing out a directional path for fire apparatus," and accordingly all the claims except one expressly included that limitation. Those now relied on are:

"1. A traffic signaling system comprising a plurality of signals distributed in the streets of a city, the distance between the signals being such that one of them will be effective as a signal at any point between any two proximate signals, and means for operating the signals to point out a path for fire apparatus, or the like.

"2. A traffic signaling system comprising a plurality of audible signals distributed in the streets of a city, the distance between any two proximate signals being such that one of them will be audible at any point between them, and means for selecting and operating any number of the signals to point out a path for fire apparatus or the like."

"9. A traffic signaling system comprising a plurality of signals distributed along a street of a city, separate circuits including said signals and leading from a common point, said circuits having a common return wire, indicating circuits having indicating devices therein located at the common point and in parallel with the signals, switches at the signals each adapted to open and close one of the signal circuits and one of the indicating circuits, and means at the common point for opening and closing any one of the signal circuits."

The New York system was designed only for the normal regulation of traffic, and not for clearing the way for emergency vehicles. All the signals on one avenue are on one

circuit, so that it is impossible for the central office to operate any one signal separately, and furthermore the signals themselves are of such a nature that they merely stop cross traffic and do not stop the normal traffic along the street which an emergency vehicle might be using. The regular operation of the system is entirely automatic, and is controlled by timing devices in the central office so that, without the interposition of any act of the operator, all the lights along one avenue turn from red to green, or vice versa, at regular intervals; and furthermore the intervals for all the avenues bear a fixed relation to each other, so that there is a staggering of the light changes for the convenience of vehicles going east and west across several avenues. Thus there is a unified automatic system of traffic signaling for the entire borough which has never been used for expediting the passage of an emergency vehicle and which never could be used for that purpose without dispensing with its automatic feature. There is, however, provision for a manual operation of all the signals on any one avenue to be used in case of a breakdown of the unified timing device, and it is possible for the central operator to cut off the automatic control and hold the lights along any one avenue at green for an indefinite period during which cross traffic would be eliminated without stopping the normal up and down traffic on that avenue or the traffic turning into it from the cross streets.

The plaintiffs contend that this possibility of manually controlling the signals of an entire avenue as a unit infringes the patent. It is quite apparent, however, that under the conditions prevailing in New York City it could not be used "to point out a path for fire apparatus or the like." In the first place, the normal traffic up and down the avenue and from the cross streets into the avenue would continue unabated, and, in the second place, the route of the fire engine or other emergency vehicle would not, except in the rarest instances, be confined to the one avenue. As a practical matter, it would be utterly impossible "to point out a path" from half a dozen different firehouses to a given fire by holding at green all the lights along one or more entire avenues.

The ninth claim is not expressly limited to "pointing out a path," but, in view of the specification and the Patent Office history, I believe that is an implied limitation. There are, however, other grounds for holding that claim uninfringed. It plainly requires a separate circuit for each street signal and a telltale in the central office for each individual signal; also a switch at each signal capable of opening both the signal circuit and the telltale circuit which is in parallel with it. The New York system has no such separate circuits for the individual signals and no telltales at the central office showing whether the individual signals are operating or not; and the switches at the signals are not capable of opening any telltale circuits at the central office. There are lights at the central office which synchronize with the signals of an entire avenue, but these are unaffected by the opening or closing of a switch at the individual signals.

A decree is accordingly directed in favor of the defendants dismissing the bill upon the merits, with costs.